T.C. Memo. 2003-268

UNITED STATES TAX COURT

ANDREW J. ZOGLMAN, Petitioner, AND
KATHY E. MORRISON, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2888-02.          Filed September 12, 2003.

Andrew J. Zoglman, pro se.

Kathy E. Morrison, pro se.

<u>Daniel J. Parent</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined a $3,347 deficiency in
petitioner's 1996 Federal income tax.   Petitioner seeks relief

from joint and several income tax liability under section 6015.[1] Respondent determined that petitioner is not entitled to relief from joint and several liability under section 6015, and petitioner timely filed a petition seeking review of respondent's determination. The issue presented for our consideration is whether petitioner is eligible for relief from joint and several liability under subsections (b) or (c) of section 6015.

FINDINGS OF FACT[2]

Petitioner Andrew J. Zoglman resided in Sacramento, California, at the time his petition was filed. Intervenor Kathy E. Morrison (Ms. Morrison) also resided in Sacramento, California, at the time she filed a Notice of Intervention. Petitioner and Ms. Morrison were married on November 19, 1988. Ms. Morrison filed for a dissolution of marriage on March 7, 1996, and a judgment of dissolution of marriage was entered on November 20, 1997.

During 1993, while petitioner and Ms. Morrison were still married, Ms. Morrison applied for Social Security benefits (benefits) at the insistence of petitioner. Initially, Ms. Morrison's application was denied. During the following 2 years

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]The parties' stipulation of facts is incorporated by this reference.

petitioner encouraged and assisted Ms. Morrison in reapplying and submitting numerous documents in support of the reconsideration of her application for benefits.

After reconsideration by the Social Security Office of Hearings and Appeals, Ms. Morrison was notified by a letter dated October 25, 1995, of her benefit award.  A few months later Ms. Morrison received another letter, dated December 13, 1995, notifying her of the monthly benefit amount and her entitlement to a lump-sum payment for retroactive benefits with respect to September 1992 through October 1995.

During 1996, Ms. Morrison received benefits totaling $39,627.10.  Of that amount, $29,613.10 represented retroactive benefits for the years 1992 through 1995.  In addition to the retroactive benefits, she was awarded attorney's fees and Medicare premiums.  The remaining $10,014 consisted of regular monthly benefits for 1996 and the attorney's fees and Medicare premiums.

Petitioner and Ms. Morrison jointly owned their residence. During March 1996 petitioner became unemployed and stopped making the monthly mortgage payments on the property.  In addition, petitioner moved from the house into the garage, where he lived for the following 6 months.  At this time, Ms. Morrison assumed responsibility for the mortgage by using her benefits to make the

payments, and she continued to do so for the remainder of the year. The house was later sold, and the parties split the sale proceeds.

During 1996, petitioner was aware that Ms. Morrison received monthly benefits. Petitioner also knew that Ms. Morrison had applied for and received a lump-sum benefit award separate from her monthly benefits and that a portion of that award was used to pay her divorce attorney.

During 1997, petitioner and Ms. Morrison agreed to file a joint Federal income tax return for the 1996 tax year. Their tax return was professionally prepared by Mr. James West. Petitioner and Ms. Morrison met with Mr. West to discuss the joint tax return and to deliver documentation to facilitate the return preparation. At this meeting Ms. Morrison presented to Mr. West her Form SSA 1099--Social Security Benefit Statement (benefit statement), which detailed the benefits she received during 1996. Upon reviewing the benefit statement, Mr. West incorrectly told the parties that the entire benefit award was not taxable. Mr. West returned the benefit statement to Ms. Morrison and did not use it in the preparation of the joint return.

Petitioner's motivation for filing a joint return was to gain the benefit of Ms. Morrison's and her family's exemptions and itemized deductions in order to offset his taxable income. The joint return was initially audited by respondent during 1997,

and the joint filing status was allowed, permitting petitioner the benefit of exemptions, itemized deductions for medical expenses (reflected on the adjusted joint return totaling $9,486), and expenses attributable to Ms. Morrison, her mother, and her daughter. In addition, petitioner obtained the benefit of itemized deductions relating to mortgage interest and real estate taxes on the joint return of $11,734 and $2,632, respectively. As a result of the initial audit, petitioner and Ms. Morrison were issued a refund of $415. After discovery of $28,146 of unreported Social Security income, respondent, during 1999, audited the 1996 joint return a second time. Respondent determined a $3,347 deficiency based on the unreported Social Security income. The corresponding increase to adjusted gross income resulted in purely mathematical reductions in itemized deductions, in the amount of $2,674.

## OPINION

The issue we consider is whether petitioner is eligible for relief from joint and several liability under subsections (b) or (c) of section 6015.

## I.   Relief Under Section 6015(b)(1)

Section 6015(b)(1) provides for spousal relief from joint and several liability if the following requirements are met:

> (A) a joint return has been made for a taxable year;
>
> (B) on such return there is an understatement of

tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual elects * * * the benefits of this subsection not later than the date which is 2 years after the date the Secretary has begun collection activities with respect to the individual making the election * * *

All of the requirements must be met, and failure to meet even one of the requirements is a bar to relief.  Sec. 6015(b)(1); Alt v. Commissioner, 119 T.C. 306, 313 (2002). Respondent concedes that petitioner has satisfied the requirements of subparagraphs (A), (B), and (E) of section 6015(b)(1).  Therefore, we must decide whether petitioner has met the requirements of subparagraphs (C) and (D), to wit:  Whether petitioner, when signing the return knew or had reason to know that there was a substantial understatement and/or whether, taking into account all of the facts and circumstances, it would be inequitable to hold petitioner liable for the understatement.

A.  Whether Petitioner Knew or Had Reason To Know of the Substantial Understatement

During 1998, section 6013(e) was repealed, and section 6015

replaced it.[3]  The requirement of section 6015(b)(1)(C) is similar to the requirement of former section 6013(e)(1)(C), in that both provisions require a spouse who is seeking relief to establish that "in signing the return, he or she did not know, and had no reason to know" of the understatement.  Because of the similarities, analysis in opinions concerning section 6013(e)(1)(C) is instructive for our analysis of section 6015(b)(1)(C).  See Jonson v. Commissioner, 118 T.C. 106 (2002); Butler v. Commissioner, 114 T.C. 276, 283 (2000).

Venue for appeal of our decision by petitioner would normally be to the Court of Appeals for the Ninth Circuit.  In omission of income cases under former section 6013(e)(1), this Court and the Court of Appeals for the Ninth Circuit have held that a relief seeking spouse knows of an understatement of tax if he knows of the transaction that gave rise to the understatement. See Guth v. Commissioner, 897 F.2d 441, 444 (9th Cir. 1990), affg. T.C. Memo. 1987-522; Braden v. Commissioner, T.C. Memo. 2001-69.  Accordingly, in such circumstances, innocent spouse relief is denied.

The record we consider supports our holding that petitioner

_____

[3]Sec. 6015 was added by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(a), 112 Stat. 685, 734.  Sec. 6015 is effective with respect to any tax liability arising after July 22, 1998, and any tax liability arising on or before July 22, 1998, that is unpaid on that date.

possessed actual knowledge of the transaction giving rise to the understatement.  Petitioner assisted Ms. Morrison in applying and reapplying for benefits for over 2 years.  Petitioner's trial testimony indicates that he knew that Ms. Morrison was receiving monthly benefits during 1996 and that she used those benefits to pay the mortgage on their residence.  The record further reflects that petitioner knew that Ms. Morrison received a lump-sum benefit separate from her monthly benefits and used $2,500 of the proceeds to pay her divorce attorney.  Petitioner's presence when Ms. Morrison presented her benefit statement to the tax return preparer also supports the conclusion that he knew Ms. Morrison received a benefit award.  Because petitioner knew of the transaction underlying the understatement, we hold that he had knowledge of the substantial understatement.

B.  Would It Be Inequitable To Hold Petitioner Liable for the Tax Liabilities?

Whether it is inequitable to hold a spouse liable for a deficiency is to be determined by taking into account all of the facts and circumstances.  Sec. 6015(b)(1)(D).  Two material factors most often considered are:  "(1) whether there has been a significant benefit to the spouse claiming relief, and (2) whether the failure to report the correct tax liability on the joint return results from concealment, overreaching, or any other wrongdoing on the part of the other spouse."  Jonson v. Commissioner, 118 T.C. at 119 (citing Hayman v. Commissioner, 992

F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228).
Normal support is not considered a significant benefit. <u>Hayman v. Commissioner</u>, <u>supra</u> at 1262 (citing <u>Flynn v. Commissioner</u>, 93 T.C. 355, 367 (1989)).

Petitioner received significant benefits as a result of filing a joint return on which the Social Security benefits went unreported. The joint return filed by the parties reflected taxable income derived almost exclusively from petitioner. Filing a joint return with Ms. Morrison allowed petitioner to significantly reduce his taxable income using exemptions and itemized deductions attributable to Ms. Morrison, her mother, and her daughter. Had he not filed the joint return with Ms. Morrison, petitioner's tax liability would have been substantially higher. Further, had Ms. Morrison filed a separate return properly including her benefits, she would have had little, if any tax liability. Her tax liability arose when her benefit income was added to petitioner's income on the joint return.

The parties' failure to report the correct tax liability was not the result of concealment, overreaching, or any other wrongdoing on the part of Ms. Morrison. Ms. Morrison was forthright and never made any attempt to conceal from petitioner the amount of benefits she received. She presented her benefit statement to the return preparer while in the presence of

petitioner, and he testified that he knew Ms. Morrison received monthly Social Security payments.

The parties failed to report the correct liability because they relied on their return preparer's assessment that the entire benefit award was not taxable.  In such situations

> Where the understatement results from "a misapprehension of the income tax laws by the preparers of the tax returns and the signatory parties," both husband and wife are perceived to be "innocent" and there is "no inequity in holding them both to joint and separate liability".  * * *

Hayman v. Commissioner, supra at 1262 (quoting McCoy v. Commissioner, 57 T.C. 732, 735 (1972)).  Taking into account all the facts and circumstances, holding petitioner and Ms. Morrison jointly and severally liable would not be inequitable.

II.  Relief Under Section 6015(b)(2)

If an electing spouse does not know or have reason to know of the extent of an understatement, under section 6015(b)(2) an individual may qualify for partial relief from joint and several liability.  To qualify, the electing spouse must establish that, in signing the return, he or she did not know or have reason to know of a portion of the understatement.  In addition, he or she must satisfy all other requirements of section 6015(b)(1) with respect to that portion.  See Vetrano v. Commissioner, 116 T.C. 272, 281 (2001)); sec 1.6015-2(e)(1) Income Tax Regs.  Section 6015(b)(2) provides:

> If an individual who, but for paragraph (1)(C), would
> be relieved of liability under paragraph (1),
> establishes that in signing the return such individual
> did not know, and had no reason to know, the extent of
> such understatement, then such individual shall be
> relieved of liability for tax * * * to the extent that
> such liability is attributable to the portion of such
> understatement of which such individual did not know
> and had no reason to know.

Upon review of the record, we conclude that petitioner knew the full extent of the understatement. Petitioner testified that, at the time of signing the 1996 joint return, he knew that Ms. Morrison was receiving monthly benefits. Similarly, the record also reflects that, at the time of signing the joint return, petitioner knew that Ms. Morrison applied for and received a lump-sum benefit apart from her monthly benefit. What is unclear is whether petitioner had knowledge of the amount of benefits received by Ms. Morrison. During trial, petitioner and Ms. Morrison provided conflicting testimony as to whether petitioner noted the amount reflected on the benefit statement when Ms. Morrison presented it to the return preparer. In addition, the parties' testimony conflicts as to whether the parties discussed the specific amount of the benefit award.

The preponderance of evidence supports our holding that petitioner had knowledge of the full amount of the benefit award. Petitioner encouraged and prodded Ms. Morrison into applying for benefits and assisted her in the application and reconsideration process. The assistance he provided made him aware that Ms.

Morrison could receive benefits retroactively from the date of her application.

Further, Ms. Morrison's testimony was more consistent with the overall record than that of petitioner, making her the more credible witness.  We are therefore persuaded by her testimony that petitioner learned of the existence and amount of the benefits through:  (1) Ms. Morrison's presentation of her benefit statement to the joint return preparer; and (2) conversations between Ms. Morrison and petitioner.

Petitioner's knowledge of the understatement is, by itself, fatal to his claim for partial relief under section 6015(b)(2).  Even if we were to assume that petitioner did not know or have reason to know of a portion of the understatement, he would not, in other respects qualify for partial relief under section 6015(b)(2).  Under that section, petitioner must also establish that he satisfies the requirements of subparagraphs (A), (B), and (D) of section 6015(b)(1), with respect to a portion of an understatement for which he lacked knowledge or a reason to know.  See sec 1.6015-2(e)(1) Income Tax Regs.  The record reflects that, with respect to the entire understatement, petitioner met the requirements of subparagraphs (A) and (B).  However, petitioner failed to meet the requirement of subsection (D) that it would be inequitable to hold petitioner and Ms. Morrison jointly and severally liable for the deficiency.

Petitioner does not meet two of the requirements of section 6015(b)(2). Accordingly, we hold that he is not entitled to partial relief from joint and several liability pursuant to this section.

III. Relief Under Section 6015(c)

In general, section 6015(c) allows proportionate tax relief from joint and several liability by relieving the requesting spouse from liability for items making up a deficiency that would have been allocable to the nonrequesting spouse had they filed separate returns. See sec. 6015(c)(1). Pursuant to section 6015(c)(3)(A)(i), an individual must meet the following conditions to be eligible to make the election:

> (I) at the time such election is filed, such individual is no longer married to, or is legally separated from, the individual with whom such individual filed the joint return to which the election relates; or

> (II) such individual was not a member of the same household as the individual with whom such joint return was filed at any time during the 12-month period ending on the date such election is filed.

The election must be made no later than 2 years after the date on which collection activities began. Sec. 6015(c)(3)(B). Further, petitioner has the burden of establishing the portion of the deficiency which is not allocable to him. See sec. 6015(c)(2); Mora v. Commissioner, 117 T.C. 279, 290 (2001).

Even if a taxpayer otherwise qualifies for this election, it will not be valid with respect to certain deficiencies. If

respondent demonstrates that petitioner, at the time of signing the joint return, had actual knowledge of any item giving rise to a deficiency (or portion thereof) that amount will not qualify for relief from joint and several liability.  See sec. 6015(c)(3)(C); Cheshire v. Commissioner, 115 T.C. 183, 193 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  An electing spouse may have the requisite "knowledge" even though he did not know that there would be tax consequences arising from the item or that the item was incorrectly reported.  See Cheshire v. Commissioner, supra at 194.

The record reflects that petitioner filed a joint return with Ms. Morrison, made a timely election, and was not married to Ms. Morrison at the time of the election.  The dispute at issue is whether petitioner had actual knowledge, at the time of signing the joint return, of the omitted Social Security income. Respondent has the burden of proving, by a preponderance of the evidence, whether petitioner had actual knowledge of the omitted income.  See Culver v. Commissioner 116 T.C. 189, 196 (2001). The knowledge standard for purposes of section 6015(c)(3)(C) is "an actual and clear awareness (as opposed to reason to know) of the existence of an item which gives rise to the deficiency (or portion thereof)."  Cheshire v. Commissioner, supra at 195.  In omitted income cases, the electing spouse "must have an actual and clear awareness of the omitted income."  Id. at 200.

Respondent must also establish that petitioner had knowledge of the amount of omitted income. "[W]here an electing spouse has actual knowledge of an income source, but no knowledge of the amount of the financial gain, the electing spouse may still qualify for relief under section 6015(c)." Rowe v. Commissioner, T.C. Memo. 2001-325; sec. 1.6015-3(c)(4), Example (4)(ii), Income Tax Regs.

After a thorough review of the record we hold that respondent has established petitioner's actual knowledge of the existence and amount of Ms. Morrison's benefit income. At the time of signing the 1996 joint return, petitioner knew Ms. Morrison had received monthly benefits and a lump-sum benefit award. He was made aware of the amount of benefits when Ms. Morrison presented her benefit statement to the joint return preparer and through discussions of the benefits with Ms. Morrison. Accordingly, we hold that petitioner is ineligible to elect the application of section 6015(c) and is not entitled to relief from joint and several liability.

To reflect the foregoing,

Decision will be entered

for respondent.