T.C. Summary Opinion 2011-126

UNITED STATES TAX COURT

NATALIYA I. ZHYROVA, Petitioner, AND DAVID S. THOMPSON,
Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3203-10S.                    Filed October 24, 2011.

Nataliya I. Zhyrova, pro se.

<u>Douglas A. Greenberg</u>, for intervenor.

<u>Lesley A. Hale</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.  Pursuant to
section 7463(b), the decision to be entered is not reviewable by
any other court, and this opinion shall not be treated as
precedent for any other case.  Unless otherwise indicated,

subsequent section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case arises from petitioner's request for relief from joint and several liability under section 6015 with respect to understatements of Federal income tax for 2006 and 2007. In separate preliminary determinations respondent denied petitioner relief from joint and several liability under section 6015(b), (c), and (f) for 2006 and determined that petitioner qualified for relief from joint and several liability under section 6015(c) and (f) for 2007;[1] intervenor disagrees.[2] The issues for decision are whether petitioner is entitled to: (1) Relief under section 6015(b), (c), or (f) for 2006; and (2) relief under section 6015(c) or (f) for 2007.

Because neither petitioner nor intervenor is entirely credible and the record is full of he-said-she-said arguments, the Court will cobble together the truth as best we can.

---

[1]At trial petitioner stated that she disagreed with respondent's preliminary determination for 2007 because when she received a letter from the Internal Revenue Service informing her that intervenor disagreed with the preliminary determination to grant petitioner relief for 2007, she thought the letter meant that the IRS had reversed its decision.

[2]Intervenor objected to respondent's preliminary determinations for both 2006 and 2007 in his notice of intervention filed with the Court.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the second stipulation of facts, and the attached exhibits are incorporated herein by reference. Petitioner resided in California when she filed her petition.

Petitioner emigrated from Russia to the United States in 2002. Petitioner earned two master's degrees and worked for 18 years as an engineer in Russia. She then worked for 10 years as an accountant for the Russian Government before coming to the United States. In 2002 petitioner enrolled in English, tax, and accounting classes in the United States. She earned an associate of arts certificate in accounting from a community college in California. Petitioner began working for H&R Block as a tax preparer in 2004 and continued to be employed there as of the time of trial. Petitioner has also been an accountant for Contra Costa County since 2007.

Petitioner met intervenor in 2003, and the couple married in August 2004. Petitioner and intervenor each had their own bank accounts at separate credit unions. Petitioner maintained an account at Patelco Credit Union (Patelco),[3] into which she deposited her paychecks. Intervenor maintained multiple accounts

---

[3]Petitioner's bank account at Patelco was a separate account in the sense that intervenor's name was not listed on the account. Petitioner's son was listed as a joint owner of the Patelco account.

at Meriwest Credit Union (Meriwest) and an account at Commonwealth Central Credit Union (Commonwealth). Intervenor deposited his Social Security Administration (SSA) benefits into the Commonwealth account. Intervenor maintained an account at Wells Fargo Bank NA (Wells Fargo) from which mortgage payments were made.

In 2005 petitioner and intervenor signed a master account application for the Meriwest account with an account number ending in 4830, which lists petitioner as a joint owner of intervenor's basic checking and regular savings accounts.

Petitioner prepared the couple's 2006 and 2007 joint Federal income tax returns. The returns reported, inter alia, the following:

| Category | 2006 | 2007 |
|---|---|---|
| Wages | $14,917 | $31,719 |
| Individual retirement account distributions | 4,000 | -0- |
| SSA benefits | 9,156 | 13,705 |
| Taxable SSA benefits | -0- | 3,286 |
| Adjusted gross income | 19,093 | 35,005 |
| Earned income credit | 2,385 | 35 |
| Refund | 3,249 | 1,193 |

A Form SSA-1099, Social Security Benefit Statement, addressed to intervenor accompanied the 2006 return. The Form SSA-1099 reports benefits paid of $23,307, benefits repaid of $14,151, and net benefits of $9,156. The 2006 tax refund was deposited into petitioner's Patelco account. The Form SSA-1099 issued to intervenor for 2007 reports benefits paid of $17,894, benefits

repaid of $4,189, and net benefits of $13,705.  The 2007 refund was deposited into petitioner's Patelco account.

Respondent mailed petitioner and intervenor a CP 2000 notice (CP Notice I) proposing an increase in tax of $1,622 for 2006 because the income and payment information the Internal Revenue Service (IRS) had on file did not match the entries on the couple's 2006 joint return.  The income and payments that did not match were intervenor's SSA benefits and repayment of SSA benefits and cancellation of debt (COD) income from two credit card companies reported to the IRS on Forms 1099-C, Cancellation of Debt.  The tax increase is the difference between the couple's claimed earned income credit (EIC) and the amount as corrected by the IRS.

Step A, option 3, "I Do Not Agree with Any of the Changes", is marked on the response form that accompanied CP Notice I.  It is clear that option 1, "I Agree with All Changes", was marked and that the form was signed with two signatures and dated in the appropriate spaces under option 1.  Both the box next to option 1 and the accompanying signatures and dates were obliterated before the form was returned to the IRS.  Under Step B of the response form, option 3, "I'd like to request a payment plan to pay the tax I owe", was also marked and obliterated before the form was returned to the IRS.  Under Step C, Contact Information, only intervenor's signature is present.

Respondent mailed petitioner and intervenor a notice of deficiency for 2006 that determined a deficiency of $1,622. Neither petitioner nor intervenor responded to the notice of deficiency; therefore, respondent assessed the income tax deficiency for 2006.

Respondent mailed petitioner and intervenor a CP 2000 notice (CP Notice II) proposing a tax increase of $1,679 for 2007 because the income and payment information the IRS had on file did not match the entries on the couple's 2007 joint return. The income and payments that did not match were intervenor's: (1) SSA benefits and repayment of SSA benefits; (2) Form W-2 income and "other income" from Taylor V. Ross (Ross); (3) interest income from Wells Fargo and Meriwest; and (4) taxable retirement income from Meriwest. Neither petitioner nor intervenor responded to CP Notice II.

Respondent mailed petitioner and intervenor a notice of deficiency for 2007 that determined a deficiency of $1,679. Neither petitioner nor intervenor responded to the notice of deficiency; therefore, respondent assessed the income tax deficiency for 2007.

Petitioner submitted Form 8857, Request for Innocent Spouse Relief, to respondent for tax years 2006 and 2007. Petitioner checked "no" as her answer to the questions pertaining to being a victim of spousal abuse and whether she suffered any

mental or physical problems when the returns were signed. Petitioner also answered that she did not know that intervenor had not given her all of the information needed to prepare the couple's tax returns correctly. Petitioner listed her monthly income as $3,794 and her monthly expenses as $3,703. Five hundred dollars of petitioner's monthly income is listed as gifts.

Respondent mailed petitioner a preliminary determination for 2006 proposing to deny relief under section 6015 (b), (c), and (f) because "relief is not allowed on tax you owe on your own income or deductions." Petitioner requested a hearing with the IRS Appeals Office (Appeals) on Form 12509, Statement of Disagreement, for 2006. Petitioner did not receive a final determination for 2006.

Respondent mailed petitioner a preliminary determination for 2007 proposing to grant relief under section 6015(c) and (f). Intervenor filed Form 12509 with the IRS disagreeing with its determination that petitioner should be granted relief under section 6015(c) and (f). Petitioner requested a hearing with Appeals on Form 12509 for 2007 because no action had been taken on her account. Petitioner did not receive a final determination for 2007. Petitioner timely filed a petition with the Court disagreeing with respondent's preliminary determinations for both

2006 and 2007 after receiving no communication from the IRS for 6 months. Intervenor then filed a notice of intervention.

Petitioner and intervenor legally separated in July 2008. At the time of trial they were still in the process of finalizing their divorce.

## Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making the election, each spouse is jointly and severally liable for the entire tax due for that year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). In certain circumstances, however, a spouse who has filed a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Sec. 6015(a).

Under section 6015(a) a spouse may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability according to provisions set forth in section 6015(c). If a taxpayer does not qualify for relief under either section 6015(b) or (c), the taxpayer may seek equitable relief under section 6015(f).

Where an individual elects to have section 6015(b) or (c) apply, or in the case of an individual who requests equitable relief under section 6015(f), section 6015(e) gives jurisdiction

to the Court "to determine the appropriate relief available to the individual under this section".

I. <u>Burden of Proof</u>

Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief.  Rule 142(a); <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).  Under subsections (b) and (c) a taxpayer need only persuade the Court by a preponderance of the evidence.  <u>Stergios v. Commissioner</u>, T.C. Memo. 2009-15; see also <u>McClelland v. Commissioner</u>, T.C. Memo. 2005-121.

Under subsection (b) the taxpayer must prove to the Court that he or she had no knowledge or reason to know of the understatement and meets the other requirements of the subsection.

Under subsection (c) the taxpayer must prove to the Court that he or she meets the subsection's requirements.  If the taxpayer does not so prove or if the Commissioner proves to the Court that any one of the three exceptions for which he bears the burden of proof applies, relief will be denied.  See sec. 6015(c)(3)(A)(ii), (C), (d)(3)(C).

Generally, in subsection (c) cases where the taxpayer challenges the Commissioner's denial of relief, the allocation of the burden of proof is placed upon the adverse parties.  This

allocation becomes more difficult when the Commissioner favors granting relief and the nonrequesting spouse intervenes to oppose granting relief. Stergios v. Commissioner, supra; see sec. 6015(e)(4); Rule 325; see also King v. Commissioner, 115 T.C. 118 (2000); Corson v. Commissioner, 114 T.C. 354, 363 (2000) (nonrequesting spouse's right to intervene the same in both stand-alone and affirmative defense cases). In cases where the Commissioner is no longer an adverse party to the taxpayer and the intervenor opposes relief on the basis of any of the three exceptions mentioned above, it is possible that the burden of proof would be shifted to the intervenor. See Stergios v. Commissioner, supra. The Court need not decide who has the burden of proof under subsection (c) because both parties introduced evidence and we shall decide the issues by a preponderance of the evidence. See id.

## II. 2006

Section 6015(b) provides relief from joint and several liability for tax (including interest, penalties, and other amounts) to the extent that such liability is attributable to an understatement of tax. To be eligible for relief, the requesting spouse must satisfy the following five elements of section 6015(b)(1):

> (A) A joint return has been made for a taxable year;

(B) on such return there is an understatement of tax attributable to erroneous items of 1 individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; and

(E) the other individual * * * [makes a valid election] * * *.

The only elements at issue for 2006 are subparagraphs (B) and (C).

A.  Erroneous Items

There are two erroneous items[4] attributable to one individual filing the return--COD income and SSA benefits.  Both of these items are attributable to intervenor.  The COD income resulted from the cancellation of credit card debt intervenor incurred before he met and married petitioner.  The SSA benefits are also attributable to intervenor.  The unreported taxable SSA benefits resulted from the COD income not being reported on the 2006 return.  Petitioner satisfies the subparagraph (B) element.

---

[4]See sec. 1.6015-1(h)(4), Income Tax Regs., Erroneous item.

B.    Reason To Know

Under subparagraph (C) petitioner must also prove that she did not know or had no reason to know that there was an understatement on the 2006 return.  The record contains no evidence establishing that petitioner had actual knowledge that the couple's 2006 return contained an understatement when she signed it.  Therefore, the Court's analysis is governed by whether petitioner had reason to know of the understatement when she signed the 2006 return.

In the Ninth Circuit[5] the requesting spouse has reason to know of an understatement "if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement."[6]  Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989) (and cases cited thereat); see also Pietromonaco v. Commissioner, 3 F.3d 1342, 1345 (9th Cir. 1993) (extending the

_____

[5]But for sec. 7463(b), an appeal would lie with the Court of Appeals for the Ninth Circuit.  See sec. 7482(b)(1)(A). Therefore, the Court follows the law of that circuit.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

[6]The Court has employed a similar test:  whether a reasonably prudent taxpayer in the requesting spouse's position, when the requesting spouse signed the return, could be expected to know that the return contained an understatement or that further investigation was warranted.  Haltom v. Commissioner, T.C. Memo. 2005-209 (and cases cited therein).

Price test from deduction to omission of income cases), revg.
T.C. Memo. 1991-361 and T.C. Memo. 1991-472.

With respect to omission of income cases, in deciding
whether the requesting spouse had reason to know of the
understatement when he or she signed the return, courts also
consider whether the requesting spouse was aware of the
circumstances of the transactions that gave rise to the
understatement, not the tax consequences.  Wiksell v.
Commissioner, T.C. Memo. 1994-99, revd. on other grounds 90 F.3d
1459 (9th Cir. 1996); see also Bokum v. Commissioner, 94 T.C.
126, 145-146 (1990) (a "taxpayer claiming innocent spouse status
must establish that he or she is unaware of the circumstances
that give rise to * * * [the understatement, not merely the tax
consequences]"), affd. 992 F.2d 1132 (11th Cir. 1993); Korchak v.
Commissioner, T.C. Memo. 2006-185 (applying the knowledge of the
circumstances of the transactions test in the context of a claim
for relief under section 6015).

To decide whether the requesting spouse was aware of the
circumstances of the transactions that gave rise to the
understatement, the Court of Appeals for the Ninth Circuit
examines factors including:  (1) The requesting spouse's
education level; (2) the requesting spouse's involvement in the
couple's business and financial affairs; (3) the presence of
expenditures that appear lavish or unusual when compared to past

income levels, standard of living, and spending patterns; and (4) the "culpable" spouse's evasiveness and deceit concerning finances.[7]  Pietromonaco v. Commissioner, supra at 1345; Price v. Commissioner, supra at 965.

### 1.    Intervenor's COD Income

Petitioner's and intervenor's financial lives overlapped, but neither was completely honest with the other when it came to money or many other facets of their lives.  Petitioner did not open mail addressed to intervenor.  Petitioner found one opened statement from a credit counseling program that outlined intervenor's creditors and account balances.  When petitioner questioned intervenor about the debt, intervenor responded that his ex-wife had incurred charges on his credit cards.  He told petitioner it was none of her business and that he would handle it.  The Court concludes that when petitioner asked intervenor for his tax documents to prepare the couple's 2006 return, intervenor did not provide her with a Form 1099-C reporting the COD income.

---

[7]The Court has employed similar factors:  (1) The requesting spouse's education level and his or her business knowledge and experience; (2) the requesting spouse's participation in business affairs or bookkeeping; (3) the nonrequesting spouse's openness about the couple's income and business transactions; (4) the presence of unusual or lavish expenditures; and (5) whether the couple's standard of living improved significantly during the years in issue.  Laird v. Commissioner, T.C. Memo. 1994-564.

Petitioner has a certificate in accounting and has taken tax classes at H&R Block. She paid a portion of the couple's bills and household finances from her Patelco account. She also prepared the couple's joint tax returns. There is nothing in the record to indicate that there were any lavish or unusual expenditures made by either petitioner or intervenor. Petitioner did accuse intervenor of opening a credit card account in her name without her permission. Each accused the other of additional financial misdeeds.[8]

Although petitioner does have an accounting background and has taken some tax classes, the Court does not believe that petitioner's education, when combined with the other factors, would make her cognizant of intervenor's COD income simply because she was aware that he had credit card debt. A reasonably prudent taxpayer in petitioner's position at the signing of the return would not have known that intervenor had COD income simply because he had engaged a credit counseling agency to assist him

---

[8]Petitioner wrote a check from one Meriwest account for $4,600 after allegedly finding the checkbook in intervenor's car. Petitioner deposited the check into an account that she owned with her daughter at another bank. Petitioner wrote on the check's memo line that it was for her 55th birthday party, but she admitted at trial that that was not the purpose of the check. Petitioner wrote the check in retaliation for intervenor's alleged credit card fraud (he opened a credit card account in petitioner's name) and alleged extramarital affair. Intervenor was unaware that petitioner had written and cashed the check until after the funds had been transferred to her and her daughter's account.

with his credit card debt. Petitioner did not have reason to know about intervenor's COD income; therefore, petitioner satisfies the element under subparagraph (C) as to intervenor's COD income.

### 2. Increase in Taxable SSA Benefits

Petitioner was aware that intervenor had received SSA benefits. Intervenor's taxable SSA benefits are an erroneous item because intervenor failed to provide petitioner with the requisite information concerning his COD income. At trial petitioner made it clear by stating more than once that the reason the taxable portion of the SSA benefits had increased was that the couple's taxable income had increased by the amount of intervenor's unreported COD income. The Court concludes that had petitioner known about the COD income when completing the couple's return, she would have included it in the couple's 2006 income and in the computation for the taxable portion of intervenor's SSA benefits.

Petitioner did not have reason to know of the increase in the taxable portion of intervenor's SSA benefits; therefore, petitioner satisfies the element under subparagraph (C) as to the increase in the taxable portion of intervenor's SSA benefits.

The Court notes that the deficiency for 2006 resulted from respondent's disallowance of the EIC. But for intervenor's

erroneous items, the claimed EIC would not have been overstated.[9] The claimed EIC is the consequence, rather than the cause, of the omission of intervenor's COD income from the couple's gross income and the increase of his taxable SSA benefits for 2006.

Petitioner satisfies both of the elements in issue under section 6015(b).  Therefore, petitioner is entitled to relief under section 6015(b) for 2006.[10]

III. 2007

Respondent proposed to grant petitioner relief under section 6015(c) and (f) for 2007.  Intervenor disagrees with respondent's determination.

A.    Relief Under Section 6015(c)

Section 6015(c) allows proportionate tax relief (if a timely election is made) through allocation of the deficiency between individuals who filed a joint return and are no longer married, are legally separated, or have been living apart for a 12-month period.  Petitioner and intervenor were legally separated on July 1, 2008.

Relief granted under subsection (c) will be allocated under subsection (d).  Section 6015(d)(3)(A) provides that items giving

---

[9]Even if the Court were to view the EIC as an erroneous item, it, too, would be attributable to intervenor because it was his unreported income that created the overstated EIC.

[10]Because we hold that petitioner is entitled to relief under sec. 6015(b), there is no need to discuss potential relief under sec. 6015(c) or (f) for 2006.

rise to a deficiency on a joint return are to be allocated between spouses as if separate returns had been filed. The requesting spouse is liable only for his or her proportionate share of the deficiency that results from the allocation. Sec. 6015(d)(1). Where, as here, the joint return omits items of income, those items are allocated to the spouse who was the source of the income. Sec. 1.6015-3(d)(2)(iii), Income Tax Regs.

To the extent that an item giving rise to a deficiency provided a tax benefit on the joint return to a requesting spouse, however, that item shall be allocated to the requesting spouse in computing his or her share of the deficiency.[11] Sec. 6015(d)(3)(B); sec. 1.6015-3(d)(2)(i), Income Tax Regs. Any allocation under section 6015(d)(3) is made without regard to community property laws. Charlton v. Commissioner, T.C. Memo. 2001-76.

Relief under subsection (c) is not available if the requesting spouse had actual knowledge, at the time the return was signed, of any item giving rise to a deficiency (or portion thereof) that is not allocable to such individual. Sec. 6015(c)(3)(C); Hopkins v. Commissioner, 121 T.C. 73, 86 (2003);

---

[11]Petitioner and intervenor claimed an EIC of $35 on their 2007 return, and respondent disallowed the entire amount. Allocation of the claimed EIC for 2007 to intervenor is not permitted because the dependent claimed for the EIC was petitioner's son. See sec. 6015(d)(2)(A), (3)(A); see also sec. 1.6015-3(d)(2)(i), Income Tax Regs.

Cheshire v. Commissioner, 115 T.C. 183, 193-194 (2000), affd. 282 F.3d 326 (5th Cir. 2002).  The actual knowledge standard is narrower than the reason to know standard of subsection (b) or (f).  McDaniel v. Commissioner, T.C. Memo. 2009-137; see also S. Rept. 105-174, at 59 (1998), 1998-3 C.B. 537, 595 ("[A]ctual knowledge must be established by the evidence and shall not be inferred based on indications that the electing spouse had a reason to know.").

The knowledge requirement under section 6015(c)(3)(C) does not require the requesting spouse to possess actual knowledge of the tax consequences stemming from the item giving rise to the deficiency.  Hopkins v. Commissioner, supra at 86; Cheshire v. Commissioner, supra at 194; sec. 1.6015-3(c)(2), Income Tax Regs. Rather, the statute mandates only a showing that the requesting spouse actually knew of the item on the return that gave rise to the deficiency (or portion thereof), without regard to whether he or she knew of the tax consequences.  Mitchell v. Commissioner, 292 F.3d 800, 805 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; Cheshire v. Commissioner, supra.  The Court will examine each of the items of unreported income in turn to decide whether petitioner had actual knowledge of the items that gave rise to the deficiency for 2007.

1. Ross Income

Intervenor earned wage income of $266 and other income of $266 from Ross for 2007. It is not clear from the record that petitioner had actual knowledge of intervenor's employment at Ross in 2007. There are no payroll deposits from Ross in the Meriwest accounts for 2007. Petitioner testified that she helped intervenor find other work in 2007. In that process petitioner reviewed intervenor's résumé and was aware that intervenor had worked at Ross in the past. No evidence was presented that established petitioner was aware that intervenor earned any income from Ross for 2007. Therefore, petitioner did not have actual knowledge of the wage income and other income intervenor earned from Ross for 2007.

2. Interest Income From Wells Fargo and Meriwest

Intervenor earned de minimis amounts of interest income from Wells Fargo, $26, and Meriwest, $46, for 2007. Petitioner was aware that intervenor's mortgage was held by Wells Fargo, but she had no access to the account or its statements. Other than her knowledge of the existence of the Wells Fargo account, no evidence was presented that petitioner had actual knowledge of the unreported Wells Fargo interest for 2007.

Petitioner was also aware that intervenor maintained accounts at Meriwest; she was listed as a joint owner of two of the Meriwest accounts and had access to the account statements.

Petitioner's testimony about her knowledge and examination of the account statements was both contradictory and self-serving.  She testified that she knew about the Meriwest accounts in 2006 "when * * * [they were] open" and later testified that she did not know about the Meriwest accounts until 2010.  Petitioner also testified that the account statements were addressed to intervenor and that she did not open mail that was not addressed to her.  On cross-examination petitioner testified that she could not find intervenor's SSA benefit deposits in the Meriwest account statements, stating:  "But for me it was puzzle where this money came [from], because I didn't see them on Meriwest account."

The Court concludes that petitioner not only had access to the Meriwest account statements but also reviewed those statements.  Thus, petitioner had actual knowledge of the unreported interest income from the Meriwest accounts for 2007.

### 3.   Increase in the Taxable Portion of Intervenor's SSA Benefits

Intervenor earned SSA benefits of $17,894 in 2007 and repaid SSA benefits of $4,189.  Intervenor's net SSA benefits for 2007 were $13,705.  Petitioner was aware that intervenor was paid SSA benefits in 2007 and included the benefits when she prepared the couple's 2007 joint Federal income tax return, on which they reported taxable SSA benefits of $3,286.  Petitioner did have actual knowledge of intervenor's taxable SSA benefits of $3,286

for 2007, and that amount cannot be allocated entirely to intervenor.

But "'[W]here an electing spouse has actual knowledge of an income source, but no knowledge of the amount of the financial gain, the electing spouse may still qualify for relief under section 6015(c).'" Zoglman v. Commissioner, T.C. Memo. 2003-268 (quoting Rowe v. Commissioner, T.C. Memo. 2001-325); sec. 1.6015-3(c)(4), Example (4)(iii), Income Tax Regs. The increase in intervenor's taxable SSA benefits resulted from unreported income attributable to intervenor. As the Court has found above, petitioner was unaware of the Ross income and the Wells Fargo interest income. The Court discusses infra pp. 25-29 why petitioner is not liable for the portion of the deficiency attributable to the tax on Meriwest interest income but is jointly and severally liable for the unreported taxable retirement income. For the items of unreported income of which petitioner had no actual knowledge, the Ross income, the Wells Fargo interest income, and the Meriwest interest income, the Court holds that she is not liable for the portion of the deficiency attributable to the increase of taxable SSA benefits due to those items. Petitioner did have actual knowledge of the

increase in taxable SSA benefits attributable to intervenor's unreported taxable retirement income.[12]

### 4. Taxable Retirement Income

According to the Meriwest account statements, $10,016[13] was transferred from intervenor's individual retirement account (IRA) to the couple's joint savings account in 2007. The joint savings account had a zero balance before the transfer of the IRA funds. The transfer was made in March 2007. Withdrawals were made from the joint checking account in March, April, May, June, and July 2007. There was no activity on the account for the remainder of the year. As we have found above, petitioner had access to and reviewed the Meriwest account statements. Therefore, petitioner had actual knowledge of the transfer of the IRA funds into the couple's joint savings account.

Petitioner did not have actual knowledge of intervenor's wage and other income from Ross, intervenor's interest income from Wells Fargo, or the increase in intervenor's taxable SSA benefits attributable to these items of unreported income and the Meriwest interest income. Therefore, petitioner is entitled to

---

[12]We leave the computation of the actual amount of taxable SSA benefits and the tax thereon for which petitioner is liable to the parties under Rule 155.

[13]Respondent listed $10,346 as the amount of the unreported taxable retirement income for 2007. No explanation was provided for the discrepancy.

relief under section 6015(c) for the portion of the deficiency attributable to these items of income.

B.   Equitable Relief Under Section 6015(f)

A taxpayer is entitled to relief under subsection (f) if, taking into account all of the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency.  Sec. 6015(f)(1).  Both the scope and standard of our review in cases requesting equitable relief from joint and several income tax liability are de novo.  Porter v. Commissioner, 132 T.C. 203 (2009).

Rev. Proc. 2003-61, sec. 4.01(1)-(7), 2003-2 C.B. 296, 297, sets out seven threshold conditions that a requesting spouse must meet before the Commissioner will consider a request for relief under subsection (f).  There is no dispute that petitioner meets the threshold requirements for the items discussed below.

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298, sets forth a nonexclusive list of factors to be evaluated in requests for relief under section 6015 for spouses who have met the threshold conditions.  The factors are:  (1) Marital status, (2) economic hardship, (3) knowledge or reason to know of the item giving rise to the deficiency, (4) any legal obligation of the nonrequesting spouse to pay the tax liability pursuant to a divorce decree or agreement, (5) significant benefit received by the requesting spouse, (6) the requesting spouse's compliance

with income tax laws following the year for which relief is requested, (7) spousal abuse, and (8) the requesting spouse's mental or physical health at the time the return was filed or relief was requested.

The items for decision under subsection (f) are the unreported Meriwest interest income and the unreported taxable retirement income for 2007.[14] The Court will discuss each item in turn.

### 1. Meriwest Interest Income

The unreported Meriwest interest income was $46 for 2007. This amount is far too small to find that petitioner received a significant benefit from its exclusion. Considering the factors the Commissioner weighs in matters such as this, see Rev. Proc. 2003-61, sec. 4.03(2), the Court concludes that it would be inequitable to hold petitioner jointly and severally liable for the portion of the deficiency attributable to the unreported Meriwest interest income for 2007. Little would be gained by burdening this opinion with a discussion of each factor in the revenue procedure. See sec. 7463(a) (last sentence).

---

[14]Because we hold that petitioner is liable for the tax due on the unreported taxable retirement income under sec. 6015(f), there is no need to discuss whether petitioner could be relieved of the tax liability for the increased taxable portion of intervenor's SSA benefits attributable to the unreported taxable retirement income under sec. 6015(f).

2.    Taxable Retirement Income

The Court will examine all of the relevant factors listed in the revenue procedure to decide whether petitioner should be relieved of joint and several liability for tax attributable to the unreported taxable retirement income for 2007.

We look to petitioner's marital status at the time of trial in applying de novo review.  See Wilson v. Commissioner, T.C. Memo. 2010-134.  Petitioner and intervenor were legally separated at the time of trial.  This factor weighs in favor of granting relief.

Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses.  Butner v. Commissioner, T.C. Memo. 2007-136.

Petitioner listed her monthly gross pay on Form 8857 as $3,294.  She also listed $500 of gifts as part of her monthly income, which brought the total to $3,794.  Petitioner listed her monthly expenses as $3,703.  Petitioner testified that the $500 was a one-time gift from her daughter, not a monthly gift.  Petitioner is a tax return preparer with several years of experience completing tax returns and other tax forms.  Her testimony that the $500 a month she receives in gifts was a one-time occurrence is self-serving, and the Court does not have to accept it as the truth.  See Tokarski v. Commissioner, 87 T.C.

74, 77 (1986). Collection of the liability would not keep petitioner from paying her basic living expenses. This factor weighs against granting petitioner relief.

Actual knowledge of the income giving rise to the deficiency weighs strongly against granting relief. See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(B). Such knowledge may be overcome only if the factors in favor of granting relief are "particularly compelling." Id. As found above, petitioner did have actual knowledge of the unreported taxable retirement income for 2007. Although petitioner could not access the funds in intervenor's IRA, the funds were transferred into the couple's joint checking account, to which petitioner did have access. Petitioner also had access to and reviewed the account statements for all of the Meriwest accounts. This factor weighs against granting relief.

Petitioner and intervenor's separation agreement does not make any allocation of the couple's tax debt. Therefore, this factor is neutral.

Petitioner did deposit both of the refund checks for the years in issue into her Patelco account. Petitioner testified that she and intervenor discussed that the refunds would be used to pay household bills and that the refunds were used as such. The Court concludes that the refunds were used to pay household bills. No evidence was presented that petitioner received a significant benefit beyond normal support as a result of the

unpaid tax liability.  Therefore, the Court concludes that this factor weighs in favor of granting relief.  See <u>Magee v. Commissioner</u>, T.C. Memo. 2005-263 (lack of significant benefit weighs in favor of granting relief under Rev. Proc. 2003-61, <u>supra</u>).

Petitioner has been in compliance with Federal tax laws. She filed as a head of household for 2008 and fully paid her tax liability.[15]  Therefore, this factor weighs in favor of granting relief.

The factors of abuse and mental or physical health will favor granting relief if present but will not weigh against granting relief if not present.  See Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299.  There was no evidence that petitioner was abused or that she suffered from any mental or physical health problems.  Therefore, the factors of abuse and mental or physical health are neutral.

The factors of economic hardship and petitioner's actual knowledge of the unreported taxable retirement income weigh against granting petitioner relief under subsection (f) for this item of income.  The remaining factors are not compelling enough to overcome petitioner's actual knowledge of the unreported

---

[15]No evidence was presented that petitioner has not continued to be in compliance with her Federal tax obligations.

taxable retirement income.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(B).

Therefore, it is not inequitable to hold petitioner jointly and severally liable for the portion of the deficiency attributable to the unreported taxable retirement income for 2007.

IV. Conclusion

After review of all of the evidence, the Court concludes that petitioner is entitled to relief under section 6015(b) for 2006 and under section 6015(c) for 2007 for the portion of the deficiency attributable to intervenor's Ross income and Wells Fargo interest income and the portion of the increase in intervenor's taxable SSA benefits attributable to these items of income and the Meriwest interest income.  Petitioner is also entitled to relief under section 6015(f) for 2007 for the portion of the deficiency attributable to intervenor's Meriwest interest income.  Petitioner is not entitled to relief under section 6015(c) or (f) for the tax due on the unreported taxable retirement income for 2007.  Petitioner is also not entitled to relief from liability for the portion of the deficiency attributable to the increase in intervenor's taxable portion of SSA benefits for 2007 due to the retirement income.  Petitioner cannot allocate the EIC for 2007 because her son was the dependent claimed for the credit.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.